[Civ. No. 14721.   Second Dist., Div. Three.   Dec. 28, 1945.]

HENRY A. POWIS, Respondent, v. MOORE MACHINERY COMPANY (a Corporation), Appellant.

Keyes & Erskine, Erskine & Erskine and Meserve, Mumper & Hughes for Appellant.

Manley C. Davidson, Rex B. Goodcell and Covey & Covey for Respondent.

WOOD, J.—This is an action for declaratory relief and for money due as commissions. Defendant appeals from the judgment in favor of plaintiff.

Defendant was engaged in the business of selling machinery, tools and equipment for various manufacturers upon a commission basis. The goods were shipped to the customers direct from the manufacturer and after they were delivered the defendant invoiced the customers for the selling price. Plaintiff was employed by defendant as a salesman in March, 1938,

and he continued as such until January 15, 1942. The employment agreement was not for a specified time but could be terminated by either party at any time. From March, 1938, until September, 1938, the agreed compensation for the services of plaintiff was $400 a month without any commissions. From September until December, 1938, his agreed compensation was a salary of $100 a month, his traveling expenses, certain bonuses dependent upon the amount of sales, and a commission of 2 per cent on the basis of the "converted sales prices" of goods sold by him and delivered, such commission to be paid upon delivery of the goods. In December, 1938, their agreement was modified only to the extent that he should be paid a salary of $150 a month instead of $100 a month. As so modified that agreement continued in effect until July 1, 1940, when the agreement which is the essential basis of this action was made. That agreement was in the form of a letter written by defendant to plaintiff and accepted by him. It was as follows:

"H. A. Powis                                    July 1, 1940

"As you well know, we pay you commissions not only for your work in securing an order but also for your work in connection with contacting the customer between the time the order is taken and delivery of the merchandise is made, for supervising the installation of the equipment, instructing the customer concerning its use, rendering such engineering service as is generally provided by a company such as ours, and if necessary your help when required in collection of the account.

"In order to straighten out a condition which has come into being by the unusual conditions now existing, please be advised that one of the terms of your employment is that you are to receive commissions hereafter when and if the goods are actually delivered to the customer, when they have been invoiced and paid for in full; when goods are sold on a conditional sale contract and the company has received a down payment and protection against loss, commissions will be paid; and if for any reason except those hereinafter stated you should cease to be employed by this company before the goods are so invoiced, delivered and paid for, you shall be entitled to only one-half of the regular commission.

"In case of a prolonged illness or death while on the company payroll, commissions will be paid in full upon delivery, etc., as above outlined. Should you be discharged from the

employ of the company for any reason other than some act or actions of yours which we deem against the best interests of this company, full commission will be paid. (We deem 'actions against the best interests of our company' such as ones on which we could recover from the bonding company, solicitation or negotiation for manufacturer's accounts while in our employ, conducting another business while in our employ, or being interested in a competitive business while in our employ, etc.)

"By mutual agreement this plan is to be effective as of July 1, 1940.

"Please indicate that your understanding is the same as ours by signing the memorandum at the foot of this letter in the space provided.

Sincerely yours

MOORE MACHINERY CO.

J. D. Germain

Manager.

"The above states my understanding and is hereby agreed to.

H. A. Powis"

After the agreement was made, plaintiff continued in defendant's employ until January 15, 1942, when he sent a letter of resignation to defendant stating in part, "For purely personal reasons I hereby tender my resignation. . . . In taking this step I do so with a certain reluctance . . . my action is occasioned by no trace of dissatisfaction with working conditions nor remuneration, but rather because present events indicate it the wisest course." Defendant replied on January 17 by letter accepting the resignation and stating in part, "We are attaching hereto complete list of your undelivered business now on file as of Saturday noon, January 17, 1942. Commission will be paid you on this business as per agreement dated July 1, 1940. We shall consider the attached backlog correct unless discrepancies are called to our attention within one week." Plaintiff replied to that letter on January 21 stating that the list of undelivered business mentioned in defendant's letter of January 17 did not accompany the letter; that he took exception to the condition expressed in defendant's letter regarding the "back-log" to the effect that it would be considered as correct unless discrepancies

were called to their attention within one week; that, instead of that condition, any discrepancies would be pointed out as soon as discovered; and that "This does not introduce any new conditions to the agreement of July 1, 1940."

The expression "converted sales prices," used in the agreement, meant, according to the understanding of both parties, the actual sales prices computed on a margin of profit to the defendant of 15 per cent or more. The following is an illustration of the manner in which the "converted sales prices" were determined: If plaintiff sold machinery on a margin of profit to the defendant of 10 per cent, which would be two-thirds of a 15 per cent margin of profit, the converted sales price upon the basis of which plaintiff's commission would be paid would be two-thirds of the actual sales price. The parties herein stipulated at the trial that the amount of the converted sales price, of undelivered and unpaid for goods at the time plaintiff resigned, upon which the commission of plaintiff, if any, should be computed is $868,373.64. It was stipulated also as to the amount of interest plaintiff should receive, if he was entitled to a commission of 2 per cent.

Stated briefly, the controversy was as to whether plaintiff, having voluntarily quit his employment, was entitled to 2 per cent commission or to 1 per cent commission; or whether plaintiff while so employed committed an act "against the best interests" of the company, in violation of the agreement and in violation of his implied duty of loyalty to defendant, by negotiating for and obtaining for himself one of defendant's principal "accounts" and therefore was not entitled to any commission at all.

The complaint alleged in part that defendant did not employ plaintiff for any definite period of time; that the character of defendant's business was such that as long as plaintiff continued in said employment he would have "large backlogs of orders obtained by him" but undelivered; that on July 1, 1940, the defendant for the declared purpose of restraining plaintiff from terminating his employment with defendant and engaging in a competitive business "required Plaintiff to, and Plaintiff did against his will, execute" the agreement of July 1, 1940; that plaintiff resigned on January 15, 1942; that thereafter he offered to, and at all times has been ready, willing and able to perform all the services mentioned in the agreement, other than taking orders, to complete the orders taken by him; that an actual controversy relating

to the rights and duties of the parties exists concerning the construction and validity of the agreement of July 1, 1940; that defendant asserts that it is a valid agreement and defendant is only required to pay a commission of 1 per cent of the converted sales price of orders obtained by plaintiff and undelivered when plaintiff resigned; that plaintiff asserts that the agreement is invalid and void and plaintiff is entitled to a commission of 2 per cent on said orders; that the recitals in the agreement relating to services for which commissions were paid were false and were inserted in the agreement to give pretense to the forfeiture of one-half of plaintiff's commissions; that the effect of the agreement was to deprive plaintiff of his liberty, and therefore it was void as against public policy in that it compelled him to render services for an indefinite term, determinable only at the will of defendant, or it compelled him to forfeit one-half of his commissions on undelivered orders; that it was impossible for plaintiff to terminate his employment without forfeiting one-half of his regular commissions, even though he offered to perform the follow-up services; that from the time the agreement was made the defendant disregarded the terms of said agreement in that it continued to pay plaintiff, as it had done prior to making the agreement, full commissions of 2 per cent on all orders, on the fifth day of each month for all shipments made in the preceding month; that the agreement provides for a penalty and not for liquidated damages, and is unreasonable and oppressive in that it provides for a forfeiture without reference to the extent of the injury which defendant might suffer and regardless of the extent and value of the services of plaintiff rendered between the time of obtaining the orders and the time of resigning; that defendant suffered no loss by reason of plaintiff's failure to perform the follow-up services; and that there was no consideration for the agreement. The prayer of the complaint was for a declaration of the rights of the parties to the agreement, for a decree that the agreement was invalid, and for a full commission of 2 per cent of the converted sales price of all orders obtained by plaintiff.

The answer denies that defendant required plaintiff to, and that plaintiff did against his will execute, the agreement of July 1, 1940. It admits that defendant did not employ plaintiff for any definite period of time, and admits that there is a controversy between the parties with respect to the agreement. The answer alleged that the agreement is valid and

that if plaintiff is entitled to any commissions, he is entitled, under the agreement, to a commission of 1 per cent only of the converted sales price of orders obtained by him and undelivered when he resigned.

The answer also alleged as a first separate defense that when the defendant and plaintiff were discussing the agreement of July 1, 1940, it was agreed between them that the agreement should contain a provision to the effect that if plaintiff should commit any of the actions referred to in the agreement as "actions against the best interests of defendant" and if defendant should discharge plaintiff for any such acts, or if plaintiff should quit the employment of defendant after having committed any such acts, defendant would not be obliged to pay any commissions to the plaintiff on account of machinery covered by orders secured by plaintiff and thereafter delivered by defendant; and that when the plaintiff and defendant prepared the said written agreement of July 1, 1940, they by their mutual mistake failed to include the said omitted provision in the said written agreement; that while plaintiff was in defendant's employ, plaintiff "as one of the implied terms of his employment owed the defendant the duty of acting towards defendant with the utmost good faith and loyalty for the protection and advancement of defendant's interest"; that on or about October 1, 1941, plaintiff in violation of the written agreement and in violation of his duty of loyalty, entered into negotiations with the Farnham Manufacturing Company, which was one of the manufacturers represented by defendant, in order to induce it to take its line of products from defendant and give it to plaintiff; that plaintiff thereafter continued such negotiations until the first part of January, 1942; that as a result of said negotiations that company on or about January 17, 1942, terminated defendant's right to sell its products and entered into an agreement with plaintiff whereby plaintiff was employed as its representative to sell its products; that since that date plaintiff, as the representative of that company, has been selling its products; and that plaintiff is not entitled to commissions on orders obtained by him prior to his resignation and undelivered at the time he resigned.

The answer also alleged as a second separate defense and by way of counterclaim that if the contract between defendant and the Farnham Manufacturing Company had not been terminated, but had continued in existence for another year, the

defendant would have realized profits on account of the products of that company it would have sold during such year of not less than $25,000, and that defendant had been damaged in that amount by the acts of plaintiff in violating the agreement and in violating his duty of loyalty.

The defendant also filed a cross-complaint in which it incorporated the allegations of its first and second separate defenses by reference thereto, and prayed that the written agreement of July 1, 1940, be reformed to include the said omitted provision and that it have judgment against the cross-defendant for $25,000.

The court found in part that plaintiff's employment was upon a day to day basis and could be terminated at any time by defendant; that plaintiff signed the letter of July 1, 1940, "under duress, to wit, by reason of the threat of defendant expressed to plaintiff, that plaintiff would lose his employment as such salesman if he should refuse to sign said letter of July 1, 1940; that certain officers of defendant said to plaintiff that the purpose of the agreement was "to prevent plaintiff quitting his employment to enter the employment of a competitor financed by backlog— earned with the defendant"; that the recitals in paragraph 1 of the agreement relating to follow-up services were false and were inserted in the agreement as a subterfuge in order to justify the forfeiture of one-half of the commissions earned by plaintiff should he voluntarily quit his employment, and in order to restrain plaintiff from terminating his employment and engaging in competitive business; that at no time prior to or subsequent to the making of the agreement was plaintiff ever called upon to render any of the follow-up services mentioned in paragraph 1 of the agreement, and he did not render any such services, "except in one or two very insignificant matters" plaintiff did render services to customers after having obtained an order from them, but the rendering of the services was in order to keep the good will of the customers in the hope that he might obtain future sales from them; that the provisions of paragraph 2 of the agreement (that if plaintiff ceased to be employed by defendant for any reason, except illness, death or discharge for cause, his commissions would be reduced to one-half) were intended as a penalty and forfeiture and were designed to restrain plaintiff from terminating his employment; that paragraph 2 was not intended to provide a means by which defendant might pay others to perform any of the follow-up services,

nor to provide compensation to defendant for damages; that defendant maintained a service department, consisting of others than the plaintiff, which rendered the follow-up services; that plaintiff's customers were large aircraft companies, and no help was ever required in the collection of accounts; that from September, 1938, to January 20, 1942, commissions of 2 per cent were paid to plaintiff monthly between the first and fifth days of each month for goods sold the preceding month without regard to whether the goods had been delivered to or paid for by the customers; that it was never intended by either plaintiff or defendant that the commissions payable to plaintiff after the agreement was signed should be deferred until the goods were actually delivered and paid for in full; that at all times it was not impractical or extremely difficult to fix the actual damages, if any, that defendant would suffer by reason of plaintiff's ceasing to be employed after an order was obtained and before the goods were delivered and paid for; that at no time "were the services of plaintiff, subsequent to obtaining an order, in connection with said order," of any value to defendant; that the amount of one-half of plaintiff's earned regular commissions did not at any time bear any relation to the damages, if any, which defendant might suffer in the event plaintiff should cease to be employed before the goods were delivered and paid for; and that defendant suffered no damage by reason of plaintiff's ceasing to be employed by defendant before the goods were delivered and paid for. The court also found that the allegations of the first and second separate defenses were not true. Upon motion of plaintiff, made in another department of the court before the action came on for trial, the cross-complaint was stricken out.

The judgment provided that an actual controversy relating to the legal rights and duties of the parties exists concerning the construction and validity of the letter of July 1, 1940; that the letter provides for a penalty and forfeiture and the same is void and invalid; and that plaintiff is entitled to commissions of 2 per cent of the converted sales prices on all orders obtained by plaintiff, amounting to $17,367.47, and interest in the sum of $2,103.04 aggregating $19,470.51.

Appellant asserts that the finding that the agreement was signed under duress was not supported by the evidence. The duress, as stated in the finding, was by reason of the threat by defendant that plaintiff would lose his employment if he did not sign. Plaintiff testified that he did not have any-

thing to do with the preparation of the agreement and had no discussion with respect to it before it was handed to him by Mr. Germain, the manager of defendant's Los Angeles office; that he signed it three to five days after he first saw it; that Mr. Moore, the president of defendant, called him into his office to discuss the agreement, and plaintiff told him, in the presence of Mr. Germain, that he was not satisfied with it, that he did not like it because it took away his freedom in choosing the kind of work he wanted to do, that if he signed it he would have to forfeit half the money he had earned in selling machinery that had not been delivered and paid for, and that he thought it was penalizing him in order to keep him from leaving the company; that Mr. Moore replied that that was the purpose of it, that he had no intention of having any more of his men go into a competing business and finance it from a backlog of orders taken while with defendant, that everyone in the company was going to sign the agreement and that was a condition under which they would continue to be employed by the company. He testified further that he signed the agreement after the conversation with Mr. Moore, and that he did not say to Mr. Moore or Mr. Germain that the recitals in the first paragraph of the letter were untrue. Mr. Germain, who was present when plaintiff and Mr. Moore had a conversation, testified in substance the same as plaintiff concerning the conversation. He testified also that plaintiff objected to signing the agreement, saying that if he were to quit he would lose half of his commissions; that "we told him that if he lost half of his commissions that it was because only half of the jobs were done."

The agreement which was in effect while the parties were considering the proposed contract of July 1, 1940, was one that could be terminated by either party at any time. Plaintiff and defendant were negotiating concerning plaintiff's employment. The defendant offered to continue plaintiff's employment upon the terms stated in the letter. He was free to accept it or to reject it. When defendant was seeking to prove the allegations of its separate defenses it offered to prove that defendant paid plaintiff commissions in 1941 aggregating $41,000. It may be that he chose to accept the terms of employment offered to him because he knew that, even under those terms to which he had objections, his income would be very large. The evidence was not sufficient to support the finding that the agreement was signed under duress.

Appellant asserts that the finding that the recitals of paragraph 1 of the agreement, relating to the follow-up services, were false is not supported by the evidence. In the view we take of the case this finding was immaterial.

■ The agreement was not invalid and void. The provision therein to the effect that if plaintiff should quit voluntarily he should be paid 1 per cent as commission on goods which were undelivered and unpaid for was not a provision for liquidated damages. Plaintiff would not thereby be deprived of any sums which he had already earned since it related to services to be performed in the future. The agreement could be terminated at any time by either party without breaching the contract. There would be no damages to fix.

■ It was not illegal to provide that commissions would be paid when and if the goods were delivered and paid for. The fact that the defendant was generous with plaintiff, while he was its employee, and paid his commissions before the goods were delivered, rather than adhering strictly to the provision of the contract that payments of commissions would be made only when the goods had been delivered and paid for, is not a sufficient basis to justify a conclusion that the contract is invalid and void. Undoubtedly, it was a motive of defendant in placing that provision in the contract to create an incentive for plaintiff to remain with the company, but such a motive did not make the contract illegal. The provision was not one whereby earned commissions were to be withheld in the event plaintiff resigned. It was a provision stating as one of the terms of employment that plaintiff would receive his commissions when the goods were delivered and paid for, and reciting in clear language that if plaintiff should for any reason cease to be employed by defendant, except by reason of illness, death, or discharge for good cause, before the goods were delivered and paid for, he would be entitled to only one-half of the regular commission. Plaintiff was free to accept or reject the proposed terms of payment. The evidence as to conversations at the time he signed the contract shows that he understood that provision. In the letter defendant sent to him accepting his resignation, reference was made to undelivered orders and it was stated therein that he would be paid "on this business as per agreement dated July 1, 1940." In his reply thereto he did not take exception to that statement, but he took exception to the suggested method of determining whether the list of undelivered orders was correct. With full

knowledge of the agreement as to when and how much he was to be paid for his services, including particularly when and how much he was to be paid if he voluntarily resigned, he accepted the agreement. At most, if he was entitled to any commissions, he was entitled to commissions of 1 per cent of the converted sales prices of goods which were undelivered and unpaid for.

Appellant contends that the court erred in striking out its cross-complaint. As above stated, the cross-complaint was stricken out, upon motion of plaintiff, in another department of the court before the action came on for trial. Although the cross-complaint incorporated therein the allegations of the separate defenses by reference thereto, the cross-complainant sought to have the agreement reformed by including therein a provision allegedly omitted therefrom (hereinabove mentioned) by mutual mistake of the parties, and then to recover damages under the agreement as reformed. The answer did not contain a prayer for reformation of the agreement or for general relief. The cross-complaint did not tend merely to diminish or defeat plaintiff's recovery. Even though it might appear from the evidence that there was not a mutual mistake, it was error to strike out the cross-complaint.

Appellant asserts that the court erred in rejecting testimony offered by defendant (appellant) to prove its first and second separate defenses. The separate defenses were, as above stated, that plaintiff was not entitled to any commissions because he had violated his agreement by committing acts "against the best interests of this company" as defined in the agreement, and by violating his implied duty of loyalty to his employer. Defendant's counsel, while proceeding with his defense and in an effort to show that the alleged omitted provision had been omitted by mutual mistake, asked Mr. Germain what he had said in response to a certain statement made by plaintiff at the time the proposed agreement was being considered. An objection by the plaintiff that the question had been asked and answered was sustained. Then counsel for defendant made an offer of proof, and made an argument in support thereof wherein he said that the defendant should be permitted to show what the omitted provision was. The court then said it would overrule the objection. Counsel for defendant asked Mr. Germain if it was his intention to specifically state in the agreement that if plaintiff committed any

act detrimental to the company as therein recited he would receive no commission. The witness replied that it was. Counsel for defendant then introduced evidence showing that prior to 1942 the Farnham Manufacturing Company (hereinafter referred to as Farnham) was represented by defendant and that plaintiff as a salesman for defendant had been selling its products. Counsel for defendant then asked Mr. Germain whether he had received a letter dated January 8, 1942, from Farnham. When he replied that he had, counsel for defendant offered the letter in evidence. Counsel for plaintiff objected to the offer on the ground that it was an attempt to vary the terms of a written contract, and on the ground that the proper foundation had not been laid, in that, defendant had not proved that plaintiff entered into any negotiations with Farnham, that it was not proved that he violated the contract, that all that had been proved was that he resigned—"they are getting at it backwards." The court said, "I am inclined to agree with you. It seems to me before this evidence comes in there should be evidence of a statement or admission or something that could give rise to it as a foundation for it." Thereupon the court sustained the objection, stating that "it is pretty clear that there was not a mutual mistake, that it was a mistake on the part of Mr. Germain." Counsel for defendant then offered to prove that defendant was the representative of Farnham; that by letter of January 8, 1942, Farnham asked defendant to reduce its commission from 15 per cent to 10 per cent; that "on protest of that" defendant received notice under date of January 17, 1942, that defendant's contract with Farnham was ended; that under date of February 10, 1942, defendant received notice that plaintiff (who had resigned on January 15) had been appointed sales agent for Farnham in this area and that he had so acted during 1942; that a substantial amount of Farnham products had been sold to Douglas Aircraft Company, on which plaintiff received commissions substantially in excess of his previous year's earnings, while he was with defendant, when he received more than $40,000. The court sustained the objection to the offer, and defendant rested its case. The matter as to whether plaintiff had violated the agreement and his duty of loyalty to his employer, as alleged in the separate defenses, was not dependent upon whether there was a mutual mistake by the parties in omitting a provision of their agreement. It was error to re-

ject testimony offered by defendant to prove its separate defenses.

The judgment is reversed.

Desmond, P. J., and Shinn, J., concurred.

A petition for a rehearing was denied January 23, 1946, and respondent's petition for a hearing by the Supreme Court was denied February 21, 1946.